UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AVION COOK,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-24-815 |
| **SUPERIOR ASSISTED LIVING, LLC,** *et al.*, | * | |
| | * | |
| Defendants. | | |

**MEMORANDUM OPINION**

Plaintiff Avion Cook initiated the above-captioned action on March 19, 2024, against Superior Assisted Living, LLC (Superior) and Lorrie R. Davis to recover unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Maryland state law. ECF No. 1. After Superior and Ms. Davis failed to timely plead or otherwise defend the suit, the Clerk entered an Order of Default against both Defendants on August 7, 2024. ECF No. 26. On August 27, 2024, Superior and Ms. Davis filed an Answer, which included a counterclaim against Ms. Cook. ECF No. 30. That same day, Defendants filed a Motion to Dismiss and Motion to Vacate Default Order. ECF Nos. 31–32. On September 10, 2024, Ms. Cook filed a Motion to Dismiss Defendants' Counterclaim With Prejudice and a Motion to Strike Defendants' Motion to Dismiss. ECF Nos. 34–35. The time for filing a response has elapsed and no party has filed an opposition to any of the pending motions. Thus, all four motions are ripe for review. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendants' motion to vacate the default is granted, Ms. Cook's motion to strike is denied, Defendants' motion to dismiss is denied, and Ms. Cook's motion to dismiss is granted in part and denied in part.

I.   **BACKGROUND**

A.   **Complaint**

Ms. Cook's Complaint against Superior and Ms. Davis pleads five counts. ECF No. 1. Under FLSA, she pleads failure to pay minimum wage (Count I), failure to pay overtime wages (Count II), and retaliation (Count V). *Id.* She also alleges failure to timely pay wages under the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (Count III), and failure to pay minimum wages and overtime wages under the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (Count IV). *Id.*

In support of these claims, Ms. Cook alleges that she worked as a "Caregiver" for Superior and Ms. Davis, "the President and Owner of Superior."[1] *Id.* at ¶¶ 10, 12. Superior is "a personal care home located in Gwynn Oak, Baltimore County, Maryland," that "is primarily engaged in providing skilled nursing services and other therapeutic services to its clients and residents." *Id.* at ¶¶ 7–8. Ms. Cook "primarily worked the overnight shift," which "varied in length between 8 hours and 12 hours per shift," for a total of "approximately 52 hours per week." *Id.* at ¶¶ 14–16. "Defendants required Ms. Cook to sign an independent contractor agreement," but this "was an independent contractor agreement in name only" and Ms. Cook "was a covered employee pursuant to Maryland state law." *Id.* at ¶¶ 17–18, 38; *see also id.* at ¶¶ 66–68. The Complaint contains a series of examples to illustrate this allegation. *See id.* at ¶¶ 38–56.

Ms. Cook further alleges that Defendants routinely paid her less than Maryland State minimum wage and did not pay her overtime, as required by FLSA and Maryland state law. *Id.* at ¶¶ 34–37; *see also id.* at ¶¶ 57–65. Ms. Cook repeatedly informed Defendants that her paychecks did not compensate her for all the hours she had worked. *Id.* at ¶¶ 69–73. Ms. Davis

---

[1] This factual summary is drawn from the allegations in the Complaint (ECF No. 1), which are accepted as true for the purposes of deciding this motion. *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Belmora LLC* v. *Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016).

"repeatedly told Ms. Cook that she would remedy the payment situation, but never did so" and "Ms. Cook was eventually phased out of Defendants' work schedule, as [Ms.] Davis continued to advise Ms. Cook not to come to work." *Id.* at ¶¶ 74–75. Ms. Cook seeks to recover unpaid wages, damages, interest, reasonable attorney's fees, and costs. *Id.* at 11–15.[2]

### B. Answer

In their Answer, Defendants deny most allegations, but admit allegations concerning the nature of Superior's business and Ms. Davis' role with respect to Superior. ECF No. 30 at 1. Defendants contend that "the parties did not have an employer/employee relationship" within the meaning of FLSA and that Ms. Cook worked with them "as an independent contractor" who was paid via a "1099 non-employment tax form." *Id.* at 2. Defendants allege that Ms. Cook's "services were enlisted primarily to ensure the facility 'books' and documentation were compliant, and to coordinate overnight activities." *Id.* at 2–3. Defendants assert that Ms. Cook "was never authorized by Defendants to provide services beyond 8 hours each day." *Id.* Defendants' Answer also outlines a series of defenses that raise legal issues as well as factual disputes. *Id.* at 5–7.

### C. Counterclaim

Defendants' Answer asserts a counterclaim that does not identify a cause of action or basis for the Court's jurisdiction, but rather advances two categories of factual allegations. *Id.* at 8. First, the counterclaim alleges that Ms. Cook "misrepresented her qualifications to Defendants," which caused Defendants to pay Ms. Cook a higher compensation than they would have paid if Ms. Cook had been "honest about her qualifications." *Id.* Second, Defendants allege that Ms. Cook "often came to Defendants' facility with a pillow, and slept through most of the period . . . for which Defendants paid her," and that Ms. Cook was "hotelling [sic] at

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

Superior," meaning that after she "completed her 8 hours for the day, she remained at Defendants' facility without authorization . . . because . . . it was easier for her to go to her other facilities from Defendants' rather than go to her home." *Id.* Defendants seek to recover $65,000 "in cost, loss and damages." *Id.*

## II.     DISCUSSION

### A.     Defendants' Motion to Vacate Default

As an initial matter, Defendants move to vacate the Clerk of the Court's entry of default. ECF Nos. 26, 32. On August 7, 2024, the Clerk notified Superior and Ms. Davis that an Order of Default had been entered and that they had 30 days from the date of the Notice to file a motion to vacate. ECF No. 27. Defendants' motion to vacate was filed within that 30-day period. ECF No. 32.

Federal Rule of Civil Procedure 55 provides that the "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Both the Court of Appeals for the Fourth Circuit and this Court have "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and defenses be disposed of on their merits." *Colleton Prep. Acad., Inc.* v. *Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Tazco, Inc.* v. *Dir., Office of Workers Comp. Prog.*, 895 F.2d 949, 950 (4th Cir. 1990) ("The law disfavors default judgments as a general matter."). When determining whether to set aside a default, the Court considers six factors: "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the [non-moving] party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Payne ex rel. Est. of Calzada* v. *Brake*, 439 F.3d 198, 204-205 (4th Cir. 2006).

Here, all the factors weigh in favor of granting the motion to vacate the default. Defendants have acted with reasonable promptness and there is no history of dilatory action. Through prior counsel, Defendants initially attempted to file an Answer on June 7, 2024. ECF No. 20-1. This pleading was returned by the Court due to filing deficiencies. ECF No. 20. Prior counsel moved to withdraw two weeks after Ms. Cook had moved for the Clerk's entry of default, and current counsel did not enter an appearance until after the Clerk's Entry of Default had already been docketed. ECF Nos. 21–22, 26, 28. Current counsel promptly moved to vacate the Order of Default on August 27, 2024, which was little more than a week after counsel's appearance was entered and 20 days after the Clerk's Notice, which supports a finding of reasonable promptness. ECF Nos. 27–28, 32; *Pennsylvania Nat'l Mut. Cas. Ins. Co.* v. *Generali-U.S. Branch*, Civil Action No. JKB-23-2746, 2024 WL 1194737, at *2 (D. Md. Mar. 20, 2024) (finding that defendants acted with reasonable promptness in moving to set aside default on the day the motion was due).

The Court of Appeals for the Fourth Circuit has cautioned that a motion to set aside a default should ordinarily be granted when a party is blameless. *Augusta Fiberglass Coatings, Inc.* v. *Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). Prior counsel's filing error indicates that the Defendants were not personally responsible for the failure to timely file a responsive pleading. Ms. Cook did not oppose the motion to vacate the default and thus has not presented any prejudice argument. There is no indication that any sanction is appropriate in this case given the promptness of current counsel's efforts to rectify the default and lack of articulable prejudice to Ms. Cook or history of dilatory action. Finally, Defendants have raised defenses in their Answer and pending motion to dismiss, suggesting that they believe there are meritorious defenses to the suit. Considering the governing factors and the preference for resolving cases on their merits, the motion to vacate the Clerk's entry of default is granted.

### B. Ms. Cook's Motion to Strike

Ms. Cook moves to strike Defendants' motion to dismiss on the grounds that it was filed after their Answer and is thus untimely. ECF No. 35-1 at 1. In their motion to dismiss, Superior and Ms. Davis argue that this Court lacks subject matter jurisdiction over Ms. Cook's claims, and, in any event, Ms. Cook fails to state a claim upon which relief can be granted. ECF No. 31 at 2. Federal Rule of Civil Procedure 12(b) permits a party to assert these defenses by motion. Fed. R. Civ. P. 12(b)(1), (6). However, "[a] motion asserting any of these defenses must be made before [a] pleading," such as an Answer. Fed. R. Civ. P. 12(b). Defendants' responsive pleadings were filed on the same date at 8:19 pm and 8:24 pm, a mere five minutes apart. This Court has found pleadings electronically filed similarly close in time to be contemporaneous filings, particularly since the sequencing of the filings may be due, in part, to the Court's Case Management/Electronic Case Files system. *E.g.*, *FrenchPorte IP, LLC* v. *Martin Door Mfg., Inc.*, Civil Action No. TDC-14-0295, 2014 WL 4094265, at *4 (D. Md. Aug. 14, 2014). The Court will therefore treat Defendants' responsive pleadings as contemporaneous filings.

When a party files a Rule 12(b) motion to dismiss contemporaneously with an Answer, it is properly construed as a motion for judgment on the pleadings pursuant to Rule 12(c). *Walker* v. *Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). This holds true regardless of whether the motion to dismiss challenges the Court's subject matter jurisdiction pursuant to Rule 12(b)(1) or the sufficiency of the allegations in the Complaint pursuant to Rule 12(b)(6). *Int'l Painters & Allied Trades Indus. Pension Fund* v. *Apostolos Grp., Inc.*, Civil Action No. GLR-23-440, 2024 WL 916304, at *1 n.2 (D. Md. Mar. 4, 2024) (Rule 12(b)(6)); *Lane* v. *Wynne*, Civil Action No. PJM-04-1051, 2006 WL 4711891, at *2 (D. Md. June 23, 2006), *aff'd*, 218 Fed. Appx. 262 (4th Cir. 2007) (Rule 12(b)(1)). Moreover, a subject matter jurisdiction defense is not waivable. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the

court must dismiss the action."); *see also Ellenburg* v. *Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Ms. Cook's motion to strike is therefore denied.

### C.    Defendants' Motion to Dismiss / Motion for Judgment on the Pleadings

The Court will construe Defendants' motion to dismiss as a motion for judgment on the pleadings.[3] *See* Fed R. Civ. P. 12(c) ("After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager* v. *PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Thus, motions under Rule 12(c) are assessed under the same standard as Rule 12(b)(1) and (b)(6), except that the Court considers the Answer in addition to the Complaint. *Massey* v. *Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014); *Walker*, 589 F.3d at 139.

Ordinarily a court may not consider matters outside the pleadings when reviewing a motion to dismiss without converting it into a motion for summary judgment. *United States ex rel. Oberg* v. *Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); Fed. R. Civ. P. 12(d). The Court must, however, consider the entirety of the pleadings when reviewing a motion to for judgment on the pleadings, including documents incorporated by reference and attached as exhibits. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c). The Court may also consider exhibits to the Answer and Rule 12(c) motions when their accuracy and authenticity are undisputed. *Massey*, 759 F.3d at 353.

Defendants' motion advances two challenges to the Complaint. First, Defendants contend that the Court lacks subject matter jurisdiction because Ms. Cook was not an

---

[3] The fact that Ms. Cook has not filed an Answer to Defendants' counterclaim does not preclude the Court from construing the motion in this manner because the pleadings have closed as to Ms. Cooks' claims, which are those challenged in Defendants' motion. *Textron Sys. Corp.* v. *Barzan Aeronautical LLC*, Civil Action No. JRR-23-2828, 2024 WL 4135425, at *8 (D. Md. Sept. 10, 2024). Moreover, Ms. Cook has moved to dismiss the counterclaim and resolution of that motion obviates the need for a responsive filing. *See infra* II.D.

"employee" and thus her claims fall outside the ambit of FLSA. ECF No. 31 at 2. Second, Defendants argue that Ms. Cook fails to state a claim upon which relief may be granted because their total annual sales fall below FLSA's statutory threshold. *Id.* at 2–3. Each argument is addressed in turn below.

1. Subject Matter Jurisdiction

There are two types of subject matter jurisdiction challenges, those that "attack the complaint on its face" and those that "attack the existence of subject matter jurisdiction in fact." *Mortensen* v. *First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When presented with a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns* v. *United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court may properly grant a motion to dismiss for lack of subject matter jurisdiction only "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis* v. *Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Thus, the plaintiff who faces a facial challenge to subject matter jurisdiction "is afforded the same procedural protection as . . . under a Rule 12(b)(6) consideration." *Adams* v. *Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A factual challenge, however, permits the court to "decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Tall* v. *Md. Developmental Disabilities Admin.*, Civil Action No. ELH-15-3811, 2016 WL 3459854, at *4 (D. Md. June 24, 2016) (quoting *Velasco* v. *Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

Here, Superior and Ms. Davis raise a factual challenge to subject matter jurisdiction by referencing Exhibit 1 to their motion, a document entitled "Contractor Agreement" that is signed

by Ms. Cook and Ms. Davis on behalf of Superior. ECF Nos. 31 at 2; 31-1. Defendants contend that this exhibit establishes that Ms. Cook was not an employee of Superior. Though framed as a jurisdictional challenge, Defendants' argument essentially challenges the merits of Ms. Cook's FLSA claims and therefore dismissal on jurisdictional grounds is inappropriate. The Fourth Circuit Court of Appeals has instructed that "when the jurisdictional facts and the facts central to a . . . claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3d at 193 (4th Cir. 2009); *see also United States* v. *North Carolina*, 180 F.3d 574, 580-581 (4th Cir.1999).

Courts in this District and elsewhere have held that various elements of a FLSA claim, such as the existence of an employer-employee relationship, bear on the merits of the claim rather than the Court's jurisdiction. *Altes* v. *Pride Ctr. of Maryland, Inc.*, 705 F. Supp. 3d 503, 507 (D. Md. 2023) ("a plaintiff's status as a defendant's employee is a substantive ingredient[ ] of a meritorious FLSA claim") (internal quotation mark and citation omitted); *Ramirez* v. *Amazing Home Contractors, Inc.*, 114 F. Supp. 3d 306, 309 & 309 n.2 (D. Md. 2015) (holding that FLSA coverage is an essential element of an FLSA claim and not jurisdictional) (collecting cases); *Gilbert* v. *Freshbikes, LLC*, 32 F. Supp. 3d 594, 600 (D. Md. 2014) (ruling that the "question of a defendant's status as 'employer' for purposes of FLSA liability also does not implicate subject matter jurisdiction.") (collecting cases). This argument is properly assessed as part of Defendants' challenge to the sufficiency of Ms. Cook's well-pleaded allegations.

2. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in

original) (internal quotation marks and citation omitted).  When evaluating a Rule 12(c) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy sought.  *Massey*, 759 F.3d at 353; *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The same does not hold true for legal conclusions.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal conclusions from the factual allegations.  *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  "A motion for judgment on the pleadings pursuant to Rule 12(c), . . . should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief."  *United States* v. *Castillo*, Civil Action No. PWG-19-3459, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021).

       *i.*  *Employer-Employee Relationship*

"FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship."  *Kerr* v. *Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016).  Because FLSA "is 'remedial and humanitarian in purpose,' it should be broadly interpreted and applied to effectuate its goals."  *Benshoff* v. *City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (quoting *Tennessee Coal, Iron & R.R. Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)) (internal

citation omitted). Consistent with this mandate, the statutory language broadly defines the terms "employee," "employer," and "employ" to encompass "some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles." *Schultz* v. *Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (quoting *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 326 (1992)) (alteration in original). "Moreover, the labels that parties themselves attach to their relationship are not controlling." *Quinteros* v. *Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 768 (D. Md. 2008).

To determine whether a plaintiff was an employee under FLSA as opposed to an independent contractor, the Court "considers the 'economic realities' of the relationship between the worker and the putative employer." *Schultz*, 466 F.3d at 304. This, in turn, is assessed through a six-factor test that examines:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 304-305; *see also Armento* v. *Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 Fed. Appx. 445, 453 (4th Cir. 2021) (explaining that the six-factor test outlined in *Schultz* applies to the determination of whether a worker was an employee or an independent contractor). This analysis considers the totality of the circumstances; no single factor is dispositive. *McFeeley* v. *Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016). A plaintiff is not obligated to plead facts relevant to every factor, but consistent with more general pleading standards, a plaintiff must plead sufficient facts to state a plausible claim for relief under FLSA. *Altes*, 705 F. Supp. 3d at 508; *Acevedo* v. *McCalla*, Civil Action No. MJM-22-1157, 2023 WL 1070436, at *5 (D. Md. Jan. 27, 2023).

As to the first and third factors, Ms. Cook alleges that although she was required to sign an independent contractor agreement, the agreement "had multiple provisions that allowed Superior to exercise supervision and control over" her, including Ms. Cook's duties, work schedule, and materials necessary to fulfill the essential duties of the job. ECF No. 1 ¶¶ 17, 24–28. The Complaint also outlines a series of examples of how "Defendants set and controlled Ms. Cook's hours of work," "set and assigned" her "daily tasks and duties," and "supplied [her] with the necessary equipment to carry out her job duties." *Id.* at ¶¶ 39–43, 47, 50–54. As to the second factor, Ms. Cook alleges that she "did not own or operate a business at the time she executed the [independent contractor agreement]," and that this agreement set forth the terms of her compensation. *Id.* ¶¶ 19, 29–33. As to the fifth and sixth factors, Ms. Cook alleges that she "was not hired to carry out a specific project or task with a definite ending, rather she was hired to carry out daily tasks necessary for Defendants' business to function." *Id.* at ¶ 44, 55–56. This general allegation is supported by a series of examples of specific tasks Ms. Cook undertook, such as monitoring residents and assisting with daily care activities. *Id.* at ¶¶ 45–46. Taken together, these allegations are sufficient to make the existence of an employer-employee relationship plausible.

> ii.    *Enterprise Engaged in Commerce*

"FLSA covers all employees, regardless of the type of work they perform, if they are employed by 'an enterprise engaged in commerce.'" *Russell* v. *Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006). FLSA defines such an enterprise, among other things, as one "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Defendants argue they do not meet this criterion for application of FLSA protections because their total annual sales are less than $250,000. ECF No. 31 at 2–3. As Ms. Cook correctly notes, this argument rests on facts outside of the pleadings and is not

appropriately raised at this stage of the litigation. ECF No. 35-1 at 4. Moreover, regardless of whatever the total amount of Defendants' annual sales may be, FLSA outlines additional definitions for "an enterprise engaged in commerce." 29 U.S.C. § 203(s)(1). As pertinent here, subsection 203(s)(1)(B) extends this definition to "an institution primarily engaged in the care of the sick, the aged, or the mentally ill . . . who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B). In their answer, Defendants admit Ms. Cook's allegations that Superior "provides assisted living services to elderly patients," "is a personal care home," and its "business deals with taking care of individuals who need assistance and/or care to carry out daily tasks." ECF No. 1 ¶¶ 3, 7, 55; ECF No. 30 at 1–2. Ms. Cook's well-pleaded allegations are therefore sufficient to make the application of FLSA to Defendants plausible on this ground as well. Defendants' motion to dismiss (construed as a motion for judgment on the pleadings) is therefore denied.

### D. Ms. Cook's Motion to Dismiss

Finally, Ms. Cook has filed a motion to dismiss Defendants' counterclaim with prejudice pursuant to Rule 12(b)(6), arguing that the allegations raised therein do not give rise to a claim upon which relief could be granted. ECF No. 34-1 at 2. "A counterclaim need only satisfy the standard of Rule 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Clark* v. *Choudry*, Civil Action No. DKC-16-0261, 2016 WL 3541248, at *3 (D. Md. June 29, 2016) (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (2007).

As noted, *see supra* I.C., Defendants' counterclaim that does not identify a cause of action or basis for the Court's jurisdiction. It is axiomatic that federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the

Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998); *see also Rivet* v. *Regions Bank of La.*, 522 U.S. 470, 475 (1998) (reiterating the long-standing rule that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"). "A federal court has ancillary jurisdiction over compulsory counterclaims, but it cannot entertain permissive counterclaims unless they independently satisfy federal jurisdictional requirements."[4] *Whigham* v. *Beneficial Fin. Co. of Fayetteville*, 599 F.2d 1322, 1323 (4th Cir. 1979); *see also Ramirez* v. *Amazing Home Contractors, Inc.*, Civil Action No. JKB-14-2168, 2014 WL 6845555, at *5 (D. Md. Nov. 25, 2014).

Defendants' counterclaim advances two categories of factual allegations, summarily asserting that Ms. Cook: (1) misrepresented her qualifications and (2) slept at Superior after her work shift without authorization. ECF No. 30 at 8. It is entirely unclear whether these allegations constitute compulsory counterclaims. Although these allegations appear to related to Ms. Cook's employment at Superior, they lack sufficient facts that would permit the Court to determine that the counterclaim "arises out of the same transaction or occurrence" as Ms. Cook's claims. Fed. R. Civ. P. 13(a)(1); *see also Osorio* v. *5 Star Cleaning Serv., LLC*, Civil Action No. GLS 20-676, 2021 WL 6139414, at *3 (D. Md. May 24, 2021) (holding that the employer-employee relationship "is insufficient by itself to make the proposed counterclaims compulsory") (collecting cases). Indeed, the counterclaim lacks sufficient detail for the Court to conclude that it states a legal claim at all. As pleaded, the Court can only construe the allegations as a permissive counterclaim, which requires an independent basis for the Court's subject matter jurisdiction. Superior and Ms. Davis identify no federal claim or basis for diversity jurisdiction.

---

[4] Rule 13 defines a "compulsory counterclaim" as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A "permissive counterclaim" is one that does not meet these criteria. Fed. R. Civ. P. 13(b).

*See* 28 U.S.C. §§ 1331, 1332.  Defendants' counterclaim will therefore be dismissed without prejudice.

### III.     CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendants' motion to vacate the default order (ECF No. 32) is granted, Plaintiff's motion to strike (ECF No. 35) is denied, Defendants' motion to dismiss (ECF No. 31) is denied, and Plaintiff's motion to dismiss (ECF No. 34) is granted in part and denied in part.  A separate Order will follow.

Date: November 26, 2024                                    /s/
                                                                    Erin Aslan
                                                                    United States Magistrate Judge