UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AVION COOK,                                        *

    Plaintiff,                                    *

v.                                                  *          Civil Action No. EA-24-815

SUPERIOR ASSISTED LIVING, LLC,       *
*et al*.,
                                                *

    Defendants.                               *

                                                *

MEMORANDUM OPINION

Plaintiff Avion Cook initiated the above-captioned action on March 19, 2024, asserting

violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. (FLSA), and

Maryland state law.  ECF No. 1.  Ms. Cook alleges that Superior Assisted Living, LLC

(Superior) and Lorrie R. Davis failed to pay proper minimum wage and overtime for all hours

worked.  *Id.*  Pending before the Court is Ms. Cook's motion for sanctions in which she seeks

entry of a default judgment and compensation for lost wages, reasonable attorney's fees, and

costs.  ECF No. 64.  Defendants failed to timely respond; thus, the motion is fully briefed.[1]  No

---

[1]  Ms. Cook moved for sanctions on June 2, 2025.  ECF No. 64.  Pursuant to Local Rule
105.2(a) (D. Md. 2025), Superior and Ms. Davis had until June 16, 2025, to respond to the
pending motion.  They failed to do so.  To date, no opposition to the motion has been filed nor
have Defendants sought leave to extend the deadline to respond to the pending motion pursuant
to Federal Rule of Civil Procedure 6(b).  Fed. R. Civ. P. 6(b)(1)(B) (providing that the Court
may, for good cause, extend the time to respond to a motion after the time has expired if the
party failed to act because of excusable neglect).  On July 18, 2025, the Court directed
Defendants to show cause within seven days as to why Ms. Cook's motion for sanctions should
not be granted.  ECF No. 66.  Again, Defendants failed to do so.  On August 8, 2025,—two
weeks after the Court's deadline—Defendants moved for an extension of time to respond to the
show-cause order, stating that defense counsel had been out of the country and "became
medically indisposed, thereby rendering him unable to attend to legal matters."  ECF No. 67 ¶ 3.
Defendants do not, however, provide a reason for their continuous failure to engage in discovery
for almost nine months and heed the Court's discovery orders, which serves as the basis for Ms.
Cook's motion for sanctions, or their failure to timely respond to the pending motion for
sanctions.  Further, Defendants' assertions regarding counsel's alleged unavailability are

hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below, Ms.

Cook's motion for sanctions is granted.

## I.    BACKGROUND

### A.    Relevant Factual Allegations[2]

Ms. Davis is the registered owner of Superior.  ECF No. 1 ¶ 9.  Superior is located in

Gwynn Oak, Maryland, and provides assisted living services to elderly patients in the Baltimore

area.  *Id.* at ¶¶ 3, 7.  Ms. Cook began working for Defendants in April 2022.  *Id.* at ¶ 12.  Ms.

Cook held the position of "caregiver" and primarily worked the night shift, averaging eight to ten

hours per shift.  *Id.* at ¶¶ 12, 14.

Superior and Ms. Davis required Ms. Cook to sign an independent contractor agreement.

*Id.* at ¶ 17.  While the contract stated that Ms. Cook had full control of the work she performed,

*id.* at ¶¶ 22–24, it contained several provisions that granted Defendants control over the terms

and conditions of Ms. Cook's employment, *id.* at ¶ 24.  For example, Defendants set Ms. Cook's

schedule and informed her of such on a weekly basis via text or email.  *Id.* at ¶¶ 40–43.  Superior

and Ms. Davis also required Ms. Cook to fill out a timesheet and get it signed by an "approver."[3]

---

unsupported by a declaration or other competent evidence.  Defendants' motion for extension of
time to respond to the Court's Order to Show Cause (ECF No. 67) is therefore denied.  *See*
*Murphy* v. *Adams*, Civil Action No. DKC 12-1975, 2013 WL 791191, at *3 n.7 (D. Md. Mar. 1,
2013) (observing that "where a party fails to seek an extension of time prior to the expiration of a
deadline, Fed. R. Civ. P. 6(b)(1)(B) generally requires a showing of 'excusable neglect' before
an extension can be granted"); *see also Wonasue* v. *University of Maryland Alumni Ass'n*, Civil
Action No. PWG-11-3657, 2013 WL 5719004, at *3 (D. Md. Oct. 17, 2013) ("A party may be
excused from a single or occasional failure to meet a scheduling deadline, and a court ought to be
mindful that even the most diligent lawyer or ardent party may need an extension of time to meet
filing obligations.  Where missed deadlines become the norm rather than the exception, however,
there comes a time when the court must say that enough is enough.").

[2] The factual background is drawn from the allegations in the Complaint.  ECF No. 1.

[3] Ms. Cook submitted time sheets to the Court with no approver's signature on
them.  ECF No. 64-2 at 12–25.  Ms. Davis indicated approval of one of Ms. Cook's time sheets
through a text message between the two in June of 2022.  ECF No. 64-3 at 7.  (Page numbers

*Id.* at ¶¶ 48–49.  Defendants had control over Ms. Cook's duties, hours, and compensation, as well as the full authority to fire her.  *Id.* at ¶¶ 24, 26, 29–32, 39–42, 45, 75.

Superior and Ms. Davis did not hire Ms. Cook to carry out a "specific project" with a "definite ending" but instead hired her to perform daily tasks that Defendants assigned to her, including communicating with other staff members, monitoring residents, doing laundry, setting up the dining room for breakfast by setting out dishes and utensils, washing or bathing residents, and providing additional general help to residents during the night.  *Id.* at ¶¶ 44–45, 50.  Ms. Cook was also required to give medication to patients and claims that Defendants directed her on how to perform this task.  *Id.* at ¶¶ 46–47.  Defendants provided all supplies necessary for her to perform her job, including protective gear, cleaning supplies, scrubs for overnight shifts, and other materials that may be necessary in the course of her role.  *Id.* at ¶¶ 52–54.

Ms. Cook earned $75.00 per day, or $9.38 per hour, for an eight-hour shift, and $120.00 per day, or $10.00 per hour, for a twelve-hour shift.  *Id.* ¶¶ 29–30.  Defendants set her work week at five days per week with two days off.  *Id.* at ¶ 26.  On June 4, 2022, Ms. Cook informed Superior that her payment checks were not accurately reflecting all of the hours she had worked.  *Id.* at ¶¶ 70–73.  Defendants did not resolve the lost payment issue and eventually phased her out of the work schedule.  *Id.* at ¶¶ 74–75.

## B.    Relevant Procedural History

On August 7, 2024, the Clerk of the Court entered a default against Superior and Ms. Davis because they had failed to respond to the Complaint.  ECF No. 26.  On August 27, 2024, Defendants also moved to vacate the Clerk of the Court's entry of default, ECF Nos. 31–32,

---

refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.)  Additionally, Defendants demonstrated approval of Ms. Cook's time sheets by sending her three checks dated July 15, 2022, July 29, 2022, and February 10, 2023.  ECF No. 64-2 at 21–23.

which the Court subsequently granted, EFC Nos. 38–39.  On November 26, 2024, the Court

entered an Order that set forth the parties' obligation to cooperate in planning and conducting

discovery and set forth the Court's procedure for resolving discovery disputes.  ECF No. 41.

On February 4, 2025, Ms. Cook requested a conference to discuss Defendants' alleged

failure to respond to written discovery requests.  ECF No. 46.  On February 7, 2025, the Court

held a discovery conference and ordered Defendants to respond to Ms. Cook's discovery request

by February 21, 2025.  ECF Nos. 49–50.  On February 27, 2025, Ms. Cook again requested a

conference due to Defendants' alleged failure to participate in discovery.  ECF No. 52.  On April

8, 2025, Ms. Cook filed correspondence with the Court in which she alleged that Defendants still

had not responded to her discovery requests and requested that the Court enter a default

judgment against Defendants as a sanction for their failure to engage in discovery.  ECF No. 57.

On April 11, 2025, the Court directed Defendants to respond to Ms. Cook's pending discovery

requests by April 25, 2025.  ECF No. 59.  On April 26, 2025, Ms. Cook filed correspondence

with the Court in which she advised of Defendants' continuing failure to participate in discovery

and again requested entry of default as a sanction.  ECF No. 61.  On April 28, 2025, the Court

entered an Order advising Ms. Cook that if she desired affirmative relief from the Court, she

should file a motion requesting such relief.  ECF No. 62.

On June 2, 2025, Ms. Cook filed the instant motion for sanctions.  ECF No. 64.  On July

18, 2025, the Court issued an Order to Show Cause as to why Ms. Cook's motion for sanctions

should not be granted.  ECF No. 66.  The Order advised Defendants that "failure to respond to

this Order may result in entry of a default judgment against them without further notice from the

Court."  *Id*. at 2.[4]  Defendants did not timely respond.  *See* footnote 1, *supra*.

---

[4]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case
Files system (CM/ECF) printed at the top of the cited document.

## II.    DISCUSSION

Ms. Cook seeks a default judgment against Defendants as a sanction for failure to

respond to repeated discovery requests pursuant to Federal Rules of Civil Procedure 37 and 55.

ECF No. 64 at 1.  In support of her motion, Ms. Cook asserts that Defendants have failed to

respond to her written discovery requests, ignored the Court's February 7, 2025, and April 11,

2025 Orders, and ignored the Court's directives during the February 7, 2025 discovery

conference.  ECF No. 64 ¶¶ 4–12; *see also* ECF Nos. 46, 50, 59.

### A.    Default Judgment as a Sanction

Under Rule 37(b)(2)(A), the Court has wide discretion to impose sanctions for a violation

of a discovery order.  *Mutual Fed. Sav. & Loan Ass'n* v. *Richards & Assocs., Inc.*, 872 F.2d 88,

92 (4th Cir. 1989).  Available sanctions under this rule include "rendering a default judgment

against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(vi).  This Court has previously found

that a party's failure to respond to discovery can properly result in dismissal or default.  *E.g.*,

*Proctor* v. *Charlestown Cmty., Inc.*, Civil Action No. GLR-22-1365, 2023 WL 8478903, at *3

(D. Md. Dec. 7, 2023); *Franklin* v. *Tri-Cnty. Council for the Lower E. Shore of Md.*, Civil Action

No. ELH-15-786, 2016 WL 3653966, at *3 (D. Md. July 8, 2016).  When invoking the sanction

of dismissal or default, the Court's "range of discretion is more narrow" because of the

competing need to enforce discovery orders and to protect "the party's rights to a trial by jury

and a fair day in court."  *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92.

Accordingly, the Court must engage in a four-part analysis to determine whether such a

sanction is warranted, examining: "(1) whether the noncomplying party acted in bad faith;

(2) the amount of prejudice [the] noncompliance caused [the] adversary, which necessarily

includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for

deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic

sanctions." *Id.* (citing *Wilson* v. *Volkswagen of Am., Inc.*, 561 F.2d 494, 503-504 (4th Cir. 1977)); *see also Smith* v. *Devine*, 126 F.4th 331, 343 (4th Cir. 2025).  In addition to the four-part analysis, the Fourth Circuit Court of Appeals requires that the District Court provide an "explicit and clear" warning to the noncomplying party before dismissing a case with prejudice or entering a default judgment.  *Malhotra* v. *KCI Techs., Inc.*, 240 Fed. Appx. 588, 590 (4th Cir. 2007); *Hathcock* v. *Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *but see Mey* v. *Phillips*, 71 F.4th 203, 218 (4th Cir. 2023) (finding that "an explicit warning is not always necessary" prior to entry of a default judgment when the party had adequate notice of the potential sanction).

### 1.    Bad Faith

Here, Superior and Ms. Davis have consistently ignored the Federal and Local Rules and this Court's discovery Orders.  First, Defendants wholly failed to respond to Ms. Cook's initial request for discovery sent on December 17, 2024.  *See*, *e.g.*, ECF No. 46 ¶ 1.  Second, Defendants failed to submit discovery documents by February 21, 2025, as required by the Court's February 7, 2025 Order.  ECF No. 51.  Third, on April 8, 2025, Ms. Cook informed the Court that Defendants had provided inadequate responses to her interrogatories containing "boilerplate responses [] filled with general objections."  ECF No. 57.  Fourth, Defendants failed to submit discovery documents by April 25, 2025, as required by the Court's April 11, 2025 Order.  ECF Nos. 59, 61.  Finally, Defendants failed to timely respond to Ms. Cook's motion for sanctions as required by the Court's July 18, 2025 Order.  ECF No. 66.

Defendants demonstrate a pattern of recalcitrance and disregard for Orders governing the conduct of discovery that can only be characterized as bad faith.  *E.g.*, *Boyd* v. *SFS Commc'ns, LLC*, Civil Action No. PJM 15-3068, 2018 WL 4214395, at \*3 (D. Md. Sept. 5, 2018) (Sullivan, J.), *report and recommendation adopted*, 2018 WL 7047646 (D. Md. Dec. 14, 2018) (finding

that defendants' repeated failure to respond to discovery requests and abide by court orders,

paired with failure to file for bankruptcy in accord with their representations, constituted bad

faith); *see also Robertson* v. *DECO Sec., Inc.*, Civil Action No. WDQ-09-3093, 2010 WL

3781951, at *4 (D. Md. Sept. 22, 2010) ("noncompliance with discovery orders supports a

finding of bad faith").

2.    <u>Material Prejudice</u>

Defendants' refusal to participate in discovery has materially prejudiced Ms. Cook, who

is significantly limited in her ability to prosecute this action.  A sanction of default judgment

"should be confined to the flagrant case in which it is demonstrated that the failure to produce

materially affect(s) the substantial rights of the adverse party and is prejudicial to the

presentation of [their] case."  *Wilson*, 561 F.2d at 504 (internal quotation marks and citations

omitted).  "The purpose of pre-trial discovery is for a litigating attorney to obtain information

from the opposing party, information which in many cases is not otherwise available."

*Middlebrooks* v. *Sebelius*, Civil Action No. PJM 04-2792, 2009 WL 2514111, at *3 (D. Md.

Aug. 13, 2009).  As discussed in this Court's prior opinion, ECF No. 38 at 2, 10–13, the core

factual issue is the recovery of unpaid wages that Defendants failed to pay to Ms. Cook and

whether Ms. Cook qualifies as an employee for the purposes of the FLSA.  ECF Nos. 38, 59.

The lack of Defendants' discovery responses significantly hampers the Ms. Cook's ability to

prove either fact at issue, whether by a dispositive pre-trial motion or at trial.  It is therefore

evident that Defendants' repeated failure to engage in discovery has prejudiced Ms. Cook.  *E.g.*,

*Boyd*, 2018 WL 4214395, at *4 (finding that plaintiffs were severely prejudiced by defendants'

failure to respond to discovery, warranting the "severe sanction[ ]" of default judgment).

3.     Need for Deterrence

Through their inaction, Superior and Ms. Davis have demonstrated that they are unwilling to cooperate in discovery.  *E.g.*, ECF No. 46 ¶ 3 ("[T]here is simply a failure to provide any discovery responses whatsoever on the part of the Defendants."); ECF No. 52 ¶ 3 ("To date, Plaintiff has neither received any corrections to the discovery deficiencies, nor received any request for extension or any response to Interrogatories or Request for Production of Documents."); ECF No. 52 ¶ 4 ("Ms. Cook has not received any documents responsive to her Request for Production of Documents for either Defendant or any substantive answer to Interrogatories propounded by [Ms. Cook]."); ECF No. 57 ¶ 4 ("Plaintiff has not received a single document from either Defendant or any Privilege Log, as required in [the Court's] Order at ECF 50."); ECF No. 61 ¶ 2 ("[The Court's] deadline for Defendants to comply with [the] Order has passed and Plaintiff has not received any supplemental interrogatory responses from either Defendants, nor has Plaintiff received even one document from either of the Defendants in response to Plaintiff's Request for Production of Documents.").  Defendants' disregard for the Court's Orders indicates a strong need for deterrence.  *E.g.*, *Doggett* v. *City of Hyattsville, Md.*, Civil Action No. TDC-13-3889, 2014 WL 6471748, at *4 (D. Md. Nov. 17, 2014) ("There is a need for deterrence in cases where a party has brought the case to a significant standstill through failure to participate in discovery."); *Mutual Fed. Sav. & Loan Ass'n*, 872 F.2d at 92 ("[N]ot only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct.").

4.     Effectiveness of Other Sanctions

As previously noted, Superior and Ms. Davis have repeatedly ignored Ms. Cook's requests and the Court's Orders that they engage in discovery.  ECF Nos. 41, 50, 59.  "In cases

where a plaintiff has been completely unresponsive in discovery, this court has found that any

sanctions less drastic than dismissal of the case would be ineffective . . . . In fact, in situations

such as this one, where one party has brought the case to a hal[t] through a failure to participate

in discovery, the other relevant sanctions available under Rule 37 are a poor fit because their

effectiveness depends on the lawsuit moving forward." *Allen* v. *One Stop Staffing, LLC*, Civil

Action No. ELH-19-2859, 2021 WL 5416530, at \*5 (D. Md. Nov. 19, 2021) (quoting *Doggett*,

2014 WL 6471748, at \*4); *see also McFeeley* v. *Jackson St. Ent., LLC*, Civil Action No. DKC-

12-1019, 2014 WL 4182231, at \*2 (D. Md. Aug. 19, 2014) ("[Plaintiff] has failed to respond to

the granting of her own counsel's motion to withdraw as counsel or to the letter sent by the court,

[therefore] it is clear that her behavior would not be altered by less drastic sanctions [than

dismissal]"). Accordingly, no sanction other than a default judgment would be effective against

Defendants.

### 5.    Explicit and Clear Warnings

Finally, default judgment is appropriate because the Court repeatedly warned Superior

and Ms. Davis of the consequences of their failure to participate in discovery and respond to this

Court's Orders. Defendants were explicitly forewarned that their failure to participate in

discovery could result in sanctions, including entry of a default judgment against them, in the

Court's February 7, 2025; April 11, 2025; and July 18, 2025 Orders. ECF Nos. 50 (sanctions),

59 (sanctions, including default judgment), 66 (default judgment). Defendants' failure to heed

these orders represent circumstances "where the entry of default judgment . . . for systemic

discovery violations is the natural next step in the litigation." *Mey*, 71 F.4th at 218.

### B.    Sufficiency of the Well-Pleaded Allegations

One of the "legal effect[s] of a default judgment is that the defendant is deemed to have

admitted 'the plaintiff's well-pleaded allegations of fact.'" *Id.* at 223 (quoting *Ryan* v.

*Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).  A defaulting party does not, however, "admit mere conclusions of law." *Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*, Civil Action No. CCB-20-2479, 2024 WL 1132092, at *3 (D. Md. Mar. 15, 2024) (Coulson, J.).  As a consequence, "the Court must consider whether the unchallenged facts constitute a legitimate cause of action."  *Id.*; *see also Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Adm'rs, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (observing that "the pleading standards announced in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007), [apply] in the context of default judgments").

These same principles apply regardless of the posture of the case when the Court contemplates entry of a default judgment.  The Fourth Circuit Court of Appeals has cautioned that before entering a default judgment as a sanction for discovery violations the Court must be satisfied that the well-pleaded allegations in the operative pleading support the requested relief. *Mey*, 71 F.4th at 223; *see also Anderson* v. *Foundation for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (vacating the district court's entry of default as a sanction on one count because the pleaded allegations were insufficient to support the asserted claim).

In Counts I, II, IV, and V, Ms. Cook alleges violations of the FLSA and the Maryland Wage Hour Law (MWHL), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, based on Defendants' failure to pay the correct hourly wage for her regular and overtime work.  ECF No. 1 ¶¶ 83–86, 90–91, 98–105.  "The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week." *Bonilla* v. *Dops, Inc.*, Civil Action No. GJH-14-3055, 2016 WL 828096, at *3 (D. Md. Feb. 29, 2016) (citing 29 U.S.C. §§ 206, 207).  "The MWHL is the 'state parallel' to the

FLSA, and the requirements for pleading a claim under the MWHL 'mirror those of the federal law.'" *Quickley* v. *University of Md. Med. Sys. Corp.*, Civil Action No. CCB-12-321, 2012 WL 4069757, at *6 (D. Md. Sept. 14, 2012) (quoting *Brown* v. *White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)); *see also* Md. Code Ann., Lab & Empl. §§ 3-413(b); 3-415(a).  Ms. Cook alleges that Defendants undercompensated her for her regular and overtime work, *see* I.A., *supra*, and thus has pleaded a plausible violation of the FLSA and MWHL.  *Clancy* v. *Skyline Grill, LLC*, Civil Action No. ELH-12-1598, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (Grimm, J.), *report and recommendation adopted*, 2013 WL 625344 (D. Md. Feb. 19, 2013).

An employee covered under the FLSA "is one who either 'is engaged in commerce or in the production of goods for commerce' (known as 'individual coverage') or is employed in 'an enterprise engaged in commerce or in the production of goods for commerce' (known as 'enterprise coverage')." *Ergashov* v. *Global Dynamic Transp., LLC*, 680 Fed. Appx. 161, 162 (4th Cir. 2017) (quoting 29 U.S.C. § 207(a)(1) (2012)).  As pertinent here, Section 203(s)(1)(B) extends the definition of an enterprise engaged in commerce to "an institution primarily engaged in the care of the sick, the aged, or the mentally ill . . . who reside on the premises of such institution."  29 U.S.C. § 203(s)(1)(B).  In their answer, Defendants admitted Ms. Cook's allegations that Superior "provides assisted living services to elderly patients," "is a personal care home," and its "business deals with taking care of individuals who need assistance and/or care to carry out daily tasks." ECF Nos. 1 ¶¶ 3, 7, 55; 30 at 1–2, 4.  The Court previously found that Ms. Cook's well-pleaded allegations were sufficient to survive Defendants' motion to dismiss the Complaint.  ECF No. 38 at 12–13; *Cook* v. *Superior Assisted Living, LLC*, Civil Action No. EA-24-815, 2024 WL 4894923, at *7 (D. Md. Nov. 26, 2024) (finding that Ms. Cook had plausibly alleged that Superior was an enterprise engaged in commerce).

11

In Count III, Ms. Cook further alleges a violation of Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*  Among other things, this statute provides that employers "shall pay each employee at least once in every 2 weeks or twice in each month."  Md. Code Ann., Lab. & Empl. § 3-502(a)(1)(ii).  The two Maryland laws work in tandem.  "While the MWHL provides a wage baseline, the MWPCL 'governs the timing of wage payments.'"  *Morris* v. *King Oak Enters., Inc.*, Civil Action No. AAQ-24-782, 2024 WL 4476303, at *5 (D. Md. Oct. 11, 2024) (quoting *Acevedo* v. *McCalla*, Civil Action No. MJM-22-1157, 2023 WL 1070436, at *5 (D. Md. Jan. 27, 2023)).  Ms. Cook argues that Superior and Ms. Davis failed to pay all wages for work that she performed.  ECF No. 1 ¶ 92.  Failure to pay wages "clearly contravenes the twice-per-month payments the MWPCL requires."  *Morris*, 2024 WL 4476303, at *5

All three statutes at issue in this action also require that a plaintiff "demonstrate that an employee-employer relationship existed with [the] purported employer."  *Henderson* v. *S & K Sec. Consultants, Inc.*, Civil Action No. LKG-21-2484, 2025 WL 81490, at *5 (D. Md. Jan. 13, 2025).  Under the FLSA, an "employee" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  To determine whether a plaintiff in an FLSA case is an employee or an independent contractor, the Fourth Circuit instructs lower courts to use the "economic realities" test.  *Schultz* v. *Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); *Bocangel* v. *Warm Heart Fam. Assistance Living, Inc.*, Civil Action No. PX-16-3989, 2020 WL 869222, at *3-4 (D. Md. Feb. 21, 2020) (finding an analysis of the economic reality test necessary to determine if a caregiver and nursing home qualify as an employee-employer relationship).  This test evaluates whether an individual worker is "economically dependent on the business to which [they] render[ ] service" or rather an independent contractor who is "as a matter of economic [reality], in business for [them]self."

12

*Schultz*, 466 F.3d at 304-305 (internal quotation marks and citation omitted).  The "totality of the

circumstance" governs the economic reality test, but courts place emphasis on the six "*Silk*

factors."  *Bocangel*, 2020 WL 869222, at *3-4 (citing *United States* v. *Silk,* 331 U.S. 704, 716

(1947)).  Those factors are:

> (1) the degree of control that the putative employer has over the manner in which
> the work is performed; (2) the worker's opportunities for profit or loss dependent
> on his managerial skill; (3) the worker's investment in equipment or material, or
> his employment of other workers; (4) the degree of skill required for the work; (5)
> the permanence of the working relationship; and (6) the degree to which the
> services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304-305.

With regard to the first factor, "where putative employers provide specific direction for

how workers, particularly low-skilled workers, are to perform their jobs, courts have weighed the

control factor in favor of employee status."  *Montoya* v. *S.C.C.P. Painting Contractors, Inc.*, 589

F. Supp. 2d 569, 579 (D. Md. 2008).  Thus, the first factor may be satisfied where the putative

employer sets the plaintiff's schedules, directs them to particular work sites, requires them to fill

out time sheets, and can fire them at will.  *Quinteros* v. *Sparkle Cleaning, Inc.*, 532 F.Supp.2d

762, 769 (D. Md. 2008).  Here, because Defendants had the ability to set Ms. Cook's schedule,

required her to fill out time sheets, and could fire her at will, the first *Silk* factor weighs in favor

of finding employee status for Ms. Cook.

While the second *Silk* factor assesses a plaintiff's opportunity for profit or loss based on

managerial skill, this factor typically weighs in favor of the employee when the putative

employee's work is, by its nature, time-oriented rather than project-oriented.  *E.g.*, *Montoya*, 589

F. Supp. 2d at 580; *see also Schultz*, 466 F.3d at 308 (holding that there was no evidence that

security detail agents could exercise their managerial skill to increase they pay because they were

paid at a set rate for each shift and their work schedule was dictated by the employer's needs).

As Defendants did not hire Ms. Cook for a specific project but rather directed her to work a set

schedule and paid her an hourly rate, the second *Silk* factor also weighs in favor of finding employee status.

The third *Silk* factor is based on the amount of investment an employee makes in their own equipment.  "Lack of capital investment in equipment is perhaps one of the strongest indicators that they are employees and not independent contractors."  *Montoya*, 589 F. Supp. 2d at 580 (quoting *Heath* v. *Perdue Farms Inc.*, 87 F. Supp.2d 452, 458 (D. Md. 2000)).  Here, Defendants provided all supplies necessary for Ms. Cook to perform her job.  Thus, the third *Silk* factor weighs in favor of finding employee status.

The fourth *Silk* factor weighs in favor of an employer if the job performed requires a certain level of specialized skill that would indicate that the employee was in business for themself.  Some tasks performed by workers in nursing home require specialized skill. *Bocangel*, 2020 WL 869222, at *5 (observing that administration of medication, CPR, and first aid in a nursing home setting required specialized skill).  Although Ms. Cook administered medication, her primary duties as a caregiver did not require specialized skill so as to suggest that she was in business for herself.  *Id.* at *1, 5 (concluding that this factor weighed in favor of employee status where the plaintiff assisted with daily living activities, such as dining, bathing, recreational, and housekeeping activities).

The fifth *Silk* factor is based on the permanence of the work.  *Schultz*, 466 F.3d at 309 ("The more permanent the relationship, the more likely the worker is to be an employee.").  As Ms. Cook regularly worked eight-to-twelve-hour shifts per day for roughly five days per week, the fifth *Silk* factor also weighs in favor of finding that Ms. Cook was an employee.  *Montoya*, 589 F. Supp. 2d at 581 (finding this factor weighed in favor of for-hire painter who worked for various two-week periods extending for roughly one year for the defendant); *Bocangel*, 2020 WL 869222, at *5 (stating that defendant hiring a nursing home assistant to work 40 hours per week

14

for a six-year period indicated a permanent, full-time job that was to continue indefinitely and not an independent contractor relationship); *see also Quinteros*, 532 F. Supp. 2d at 770-771 (relying on check payment stubs as evidence that plaintiffs had an exclusive, continuous relationship with the putative employer).

The final *Silk* factor "depends on whether the service the worker performed was integral to the business." *Montoya*, 589 F. Supp. 2d at 581.  A caregiver is an essential part of the operation of a business that provides assisted living services to elderly individuals.  *Bocangel*, 2020 WL 869222, at *6 (finding that caregivers working at a nursing home served "an integral role in a business whose main service was the provision of care").  The sixth *Silk* factor weighs in favor of finding that Ms. Cook was an employee.  *See also Cook*, 2024 WL 4894923, at *6 (concluding that Ms. Cook had plausibly alleged the existence of an employment relationship).

### C.    Damages

When assessing damages or other relief, the Court cannot accept as true the well-pleaded allegations but must instead make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records."  *Select Specialty Hosp. - Quad Cities, Inc.*, 2020 WL 4569521, at *3; *Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013); *see also Frozen Wheels, LLC*, 2024 WL 1132092, at *3 ("A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence.").  The Court may "conduct hearings or make referrals" when evaluating damages.  Fed. R. Civ. P. 55(b)(2).  The Court is not required to conduct an evidentiary hearing in every circumstance.  *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).  Here, the Court lacks sufficient information to evaluate the Ms. Cook's claims for damages.

15

### III.   CONCLUSION

For the foregoing reasons, it is hereby ordered that Plaintiffs' motion for sanctions (ECF No. 64) is granted.  Defendants' motion for extension of time (ECF No. 67) is denied.  A separate Order follows.


Date: August 11, 2025                                    _____/s/_____
                                                                      Erin Aslan
                                                                      United States Magistrate Judge

16