UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AVION COOK,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-24-815 |
| **SUPERIOR ASSISTED LIVING, LLC,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Plaintiff Avion Cook initiated the above-captioned action on March 19, 2024, asserting violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), the Maryland Wage Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* (MWHL), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §3-501 *et seq.* (MWPCL) based on Defendants Superior Assisted Living, LLC's (Superior) and Lorrie R. Davis' failure to pay Ms. Cook the proper minimum and overtime wage rate at all times worked throughout her employment. ECF No. 1. On August 11, 2025, this Court entered a default in favor of Ms. Cook on all claims. ECF Nos. 68, 69. Pending before the Court are Ms. Cook's petition for damages, attorney's fees, and costs (ECF No. 72) and motion to supplement her request for attorney's fees (ECF No. 73). Defendants failed to file a response and the time for doing so has elapsed; thus, the motions are fully briefed. Local Rule 105.2(a) (D. Md. 2025). No hearing is necessary. Local Rule 105.6. For the reasons set forth below, the motion to supplement is granted and the motion for default judgment and attorney's fees is granted in part and denied in part. The Court will award $58,844.22 in damages, $48,337.38 in attorney's fees, and $413.13 in costs.

I.  **BACKGROUND**[1]

Superior is located in Gwynn Oak, Maryland, and provides assisted living services to elderly patients in the Baltimore area. ECF No. 1 ¶ 3, 7. Ms. Davis is the registered owner of Superior. *Id.* at ¶ 10. Ms. Cook began working for Defendants in April 2022, held the position of caregiver, and worked an average of 8 to 12 hours per shift. *Id.* at ¶¶ 12, 15. Defendants agreed to pay Ms. Cook $75.00 per eight-hour shift ($9.38 per hour) and $120.00 per twelve-hour shift ($10.00 per hour), but actually paid her $75.00 per shift, regardless of hours worked. *Id.* at ¶¶ 29–30, 62. During the period of Ms. Cook's employment, Superior had fewer than 15 employees. *Id.* at ¶ 13. On multiple occasions, Ms. Cook informed Superior that her payment checks were not accurately reflecting all the hours she had worked. ECF No. 1 ¶¶ 70–73. Defendants did not address the payment issue and phased Ms. Cook out of the work schedule. *Id.* at ¶¶ 74–75.

On August 11, 2025, the Court entered default in favor of Ms. Cook and against Superior and Ms. Davis as a sanction pursuant to Federal Rule of Civil Procedure 37 because Defendants had failed to respond to discovery requests and adhere to the Court's discovery orders. ECF Nos. 68–69; *see also* Fed. R. Civ. P. 37(b)(2)(A)(vi). At that time, the Court reserved decision on the amount of damages because it "lack[ed] sufficient information to evaluate . . . Ms. Cook's claims for damages." ECF No. 68 at 15.[2] Ms. Cook subsequently filed the instant petition. ECF

---

[1] The factual background is drawn from the allegations in the Complaint (ECF No. 1), which are deemed admitted following the Court's entry of a default against Defendants, *e.g.*, *Mey* v. *Phillips*, 71 F.4th 203, 223 (4th Cir. 2023). Further procedural background is set forth in the Court's prior memorandum opinions. ECF Nos. 68, 74; *Cook* v. *Superior Assisted Living, LLC*, Civil Action No. EA-24-0815, 2025 WL 2306268 (D. Md. Aug. 11, 2025) and 2025 WL 2897342 (D. Md. Oct. 10, 2025). For ease of reference, further citation to these decisions will refer to the ECF number only.

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.

2

No. 72. With respect to damages, the petition is supported by a sworn declaration by Ms. Cook (ECF No. 72-3), a damage calculation spreadsheet (ECF No. 72-1), and photographs of some of Ms. Cooks timesheets from Superior (ECF No. 72-4).

In her declaration, Ms. Cook attested that she was employed by Defendants from April 28, 2022, through April 12, 2023, and maintained personal timekeeping records for 26 of the 50 weeks of her employment.[3] ECF No. 72-3 ¶¶ 2, 7–8. Ms. Cooks further attested that "[b]ecause Defendants did not participate in discovery, [she] do[es] not have time or pay records" for 24 of the 50 weeks Defendants employed her. ECF No. 72-3 ¶¶ 7–8. Based on the timekeeping records in her possession, Ms. Cook attested that she worked on average 52 hours per week and was paid $75 for each workday. *Id.* at ¶¶ 9, 11. Based on her own recollection, Ms. Cook estimated that she worked the same number of hours and was paid the same amount during the 24 weeks for which she does not have timekeeping records. *Id.* at ¶¶ 10–11. Defendants were aware of the hours Ms. Cook worked and nevertheless failed to pay Ms. Cook both the required minimum wage and overtime wages she worked. ECF No. 1 ¶¶ 60, 65, 70–73; ECF No. 72-3 ¶¶ 11–13.

Ms. Cook attested that for the 26 weeks for which she has timekeeping records, she earned a total of $12,760.80 in minimum wages and $6,747.11 in overtime wages and therefore should have received $19,507.51 for that period of employment. ECF Nos. 72 at 7; 72-1 at 7; 72-3 ¶ 12. According to her pay records, Defendants paid Ms. Cook only $11,775.00 for these 26 weeks. ECF Nos. 72 at 5, 7; 72-1 at 7; 72-3 ¶ 13. In her declaration, Ms. Cook also attested to estimates of her earned minimum and overtime wages in 2022 and 2023 for the 24 weeks for

---

[3] In paragraph 2, Ms. Cook estimates the duration of her employment with Defendants as "about 48 weeks," but the number of weeks she outlines for which she does and does not have timekeeping records in paragraphs 7 and 8 total 50 weeks. *Compare* ECF No. 72-3 ¶ 2, *with id.* at ¶¶ 7–8; *see also* ECF No. 72 at 7 (identifying the number of weeks Defendants employed Ms. Cook as 50).

3

which she does not have timekeeping records, which total $17,469.60, as well as the estimated amount she was paid during that period, which totals $9,000.00. ECF Nos. 72 at 8–9; 72-3 ¶¶ 12, 14. Based on the actual and estimated amounts she was owed in wages and the actual and estimated amounts she was paid, Ms. Cook calculated that Defendants owe her $16,202.51 in minimum and overtime wages. ECF Nos. 72 at 9; 72-3 ¶ 15. Defendants did not file anything in response to Ms. Cook's petition to contest the legal or factual basis for her damage calculation.

**Chart 1: Minimum Wages Earned**

|  | Minimum Wage | Hours per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| Pay Records | Varied[*] | Varied | Varied | 26 | $12,760.80 |
| 2022 No Records | $12.20 | 40 | $488.00 | 10 | $4,880.00 |
| 2023 No Records | $12.80 | 40 | $512.00 | 14 | $7,168.00 |
| **Total** |  |  |  |  | **$24,808.80** |

**Chart 2: Overtime Wages Earned**

|  | Overtime Wage | Hours per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| Pay Records | Varied | Varied | Varied | 26 | $6,747.11 |
| 2022 No Records | $18.30 | 12 | $219.60 | 10 | $2,196.00 |
| 2023 No Records | $19.20 | 12 | $230.40 | 14 | $3,225.60 |
| **Total** |  |  |  |  | **$12,168.71** |

**Chart 3: Total Wages Earned**

| | |
|---|---|
| Total Minimum Wages Earned | $24,808.80 |
| Total Overtime Wages Earned | $12,168.71 |
| **Total Wages Earned** | **$36,977.51** |

**Chart 4: Total Wages Paid by Defendants**

|  | Daily Wage | Days per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| Pay Records | $75.00 | Varied | Varied | 26 | $11,775.00 |
| No Pay Records | $75.00 | 5 | $375.00 | 24 | $9,000.00 |
| **Total** |  |  |  |  | **$20,775.00** |

---

[*] The Maryland minimum wage increased on January 1, 2023, from $12.20/hour to $12.80/hour. *Compare* Md. Code Ann. Lab. & Empl. § 3-413(c) (2022) *with* Md. Code Ann. Lab. & Empl. § 3-413(c) (2023). Ms. Cook kept her own pay records for various weeks throughout her employment period. ECF No. 72-4. According to these pay records, the hours Ms. Cook did not work the same number of hours week to week. Some weeks, Ms. Cook worked 20.5 hours, whereas other weeks she worked 68.5 hours.

4

**II.     DISCUSSION**

Following the Court's entry of a default against Superior and Ms. Davis, Ms. Cook filed a petition for damages, attorney's fees and costs, each of which is addressed in turn below.

**A.     Damages**

1.     <u>Wage Claims (FLSA, MWHL, MWPCL)</u>

The Court previously found Defendants liable on Counts I, II, and IV under FLSA and MWHL based on their failure to pay full minimum and overtime wages. ECF Nos. 68–69. "The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week." *Bonilla* v. *Dops, Inc.*, Civil Action No. GJH-14-3055, 2016 WL 828096, at *3 (D. Md. Feb. 29, 2016) (citing 29 U.S.C. §§ 206-207). "The MWHL is the 'state parallel' to the FLSA, and the requirements for pleading a claim under the MWHL 'mirror those of the federal law.'" *Quickley* v. *Univ. of Md. Med. Sys. Corp.*, Civil Action No. CCB-12-321, 2012 WL 4069757, at *6 (D. Md. Sept. 14, 2012) (quoting *Brown* v. *White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)). Defendants were also found liable on Count III for violating the MWPCL by failing to timely pay Ms. Cook. ECF Nos. 68–69.

Although the Court entered judgment against Defendants on four different wage claims, Ms. Cook may only recover damages under one theory of liability. *General Tel. Co. of the Nw., Inc.* v. *Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 333 (1980) (instructing that "courts can and should preclude double recovery by an individual"); *see also Melendez* v. *Spilled Milk Catering, LLC*, Civil Action No. PWG-18-2135, 2019 WL 2921782, at *3 (D. Md. July 8, 2019) (explaining that a plaintiff may only recover "an amount equivalent to the minimum wages she established as owed; she cannot recover three times that amount by . . . [aggregating recoveries] under the FLSA, MWHL, and MWPCL.") (alteration in original).

The FLSA, MWPCL, and MWHL all permit enhanced damages. 29 U.S.C. § 216(b); Md. Code. Ann., Lab & Empl. § 3-507.2(b); Md. Code Ann., Lab & Empl. § 3-427(d)(1)(ii). The FLSA allows employees to recover "the amount of their unpaid wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under the MWHL, "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover . . . an additional amount equal to the difference between the wage paid to the employee and the wage required under this subtitle as liquidated damages." Md. Code Ann., Lab. & Empl. §§ 3-427(a)(2), (d)(1)(ii). The MWPCL allows recovery of "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs" when "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." Md. Code Ann., Lab. & Empl. § 3-507.2(b). Enhanced damages under these statutes "serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Lopez* v. *Lawns 'R' Us*, Civil Action No. DKC-07-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008) (Schulze, J.), *report and recommendation adopted*, 2008 WL 11509751 (D. Md. June 26, 2008).

When assessing damages or other relief, the Court cannot accept as true the well-pleaded allegations but must instead make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records." *Guzman* v. *Mahjoub*, Civil Action No. PX-17-1591, 2019 WL 2233351, at *2 (D. Md. May 23, 2019); *see also Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (noting that the Court may rely "on affidavits or documentary evidence in the record to

6

determine the appropriate sum" of damages following entry of default judgment).  The Court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), although an evidentiary hearing is not required in every circumstance, *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

With respect to a claim for unpaid wages, a plaintiff has the initial burden to prove that they "in fact performed work for which" they were "improperly compensated" and to "produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  A plaintiff may satisfy this burden through sworn declaration.  *E.g.*, *Juarez* v. *A.M.C. Constr., LLC*, Civil Action No. PWG-20-1508, 2022 WL 3586511, at *2 (D. Md. Aug. 22, 2022); *see also Clancy* v. *Skyline Grille, LLC*, Civil Action No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012) (Grimm, J.) (collecting cases), *report and recommendation adopted*, 2013 WL 625344 (D. Md. Feb. 19, 2013).  Upon such a showing, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed."  *Anderson*, 328 U.S. at 687-688.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  *Id.* at 688.

Here, Ms. Cook has met her initial burden to establish the amount and extent of her work through her submission of a compilation of the timekeeping records in her possession and a sworn declaration that outlines her recollection of the hours she worked during periods of employment for which she does not have timekeeping records.  ECF Nos. 72, 72-1, 72-3.  Defendants did not respond.  Ms. Cook seeks an award of all earned, unpaid minimum and overtime wage compensation under Maryland law, which provides for a higher minimum wage than that available under the FLSA.  ECF No. 72 at 5–9; *compare* Md. Code Ann. Lab. & Empl. §§ 3-413(a)(2), (c)(2) (2023) ($12.80 per hour for businesses with 14 or fewer employees) *with*

7

29 U.S.C. § 206(a)(1)(c) ($7.25 an hour).  As for liquidated damages, Ms. Cook seeks three times the amount of her unpaid wages under the MWPCL.  ECF No. 72 at 10, 12 n.1.

The United States Court of Appeals for the Fourth Circuit "has held that a grant of liquidated damages is the 'norm' in cases in which the FLSA is violated." *Williams* v. *Maryland Off. Relocators*, 485 F. Supp. 2d 616, 620 (D. Md. 2007) (citing *Mayhew* v. *Wells*, 125 F.3d 216, 220 (4th Cir. 1997)).  Further, "it has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL," when a defendant does not offer evidence of a bona fide dispute, and plaintiffs do not offer evidence of consequential damages attributable to the underpayments.  *Fiallos* v. *Hamzah Slaughter House, LLC*, Civil Action No. JMC-20-3577, 2022 WL 16540001, at *7 (D. Md. Oct. 28, 2022) (collecting cases); *see also Morris* v. *King Oak Enters., Inc.*, Civil Action No. AAQ-24-782, 2024 WL 4476303, at *9 (D. Md. Oct. 11, 2024).  Here, Defendants have not identified any bona fide dispute, and Ms. Cook does not allege any consequential damages.  Thus, an award of double damages under the MWHL is appropriate.  *E.g.*, *Butler* v. *PP&G, Inc.*, Civil Action No. JRR-20-3084, 2023 WL 3580374, at *9 (D. Md. May 22, 2023) (Hurson, J.), *report and recommendation adopted as modified*, 2023 WL 12090213, (D. Md. June 25, 2023) (finding double damages under the MWHL more appropriate than treble damages under the MWPCL since the plaintiff could not prove consequential damages).

As outlined in Section I, *supra*, Ms. Cook attested that she is owed earned, unpaid minimum and overtime wages in the amount of $16,202.51.  Consistent with the decisions of this Court, Ms. Cook will be awarded an equal amount in liquidated damages for a total of $32,405.02.  *E.g., Ruano* v. *Scratch Kitchen & Bistro, LLC*, Civil Action No. DKC-23-2461, 2025 WL 2194634, at *10 (D. Md. Aug. 1, 2025); *Marsh* v. *Bottoms Up Gentlemen's Club, LLC*, Civil Action No. EA-23-1157, 2025 WL 2049980, at *5-6 (D. Md. July 22, 2025)).

        2.      <u>Retaliation under FLSA</u>

Ms. Cook also seeks damages for Defendants' violation of 29 U.S.C. § 215(a)(3), which prohibits retaliation based on the exercise of rights under the FLSA. "The retaliation provision renders it unlawful 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint'" relating to a FLSA violation. *Darveau* v. *Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (quoting 29 U.S.C. § 215(a)(3)); *see also Minor* v. *Bostwick Laboratories*, Inc., 669 F.3d 428 (4th Cir. 2012) (holding that "the remedial purpose of [Section 215(a)(3)] requires that it protect from retaliation employees who file intracompany complaints"). "A complaint for purposes of 29 U.S.C. § 215(a)(3) may be oral as well as written." *Yearick* v. *Kimball Constr. Co., Inc.*, Civil Action No. ELH-23-2540, 2023 WL 8829243, at *5 (D. Md. Dec. 21, 2023) (internal quotations and citations omitted). Ms. Cook made several complaints to Defendants regarding the inadequacies of her paychecks. ECF No. 1 ¶¶ 69–73. Following these complaints, Defendants removed Ms. Cook from the schedule, thereby retaliating against Ms. Cook for engaging in FLSA-protected activities. *Id.* at ¶ 75. Ms. Cook asserts that, as a result of their retaliation, Defendants caused her to be "out of work from April 12, 2023, to December 12, 2023 (seven months, or approximately 35 weeks)." ECF No. 72 at 10–11. Ms. Cook asks this Court to award her lost wages to compensate her for the impact of Defendants' retaliatory conduct. *Id.* at 10.

"Any employer who violates the provisions of section 215(a)(3) . . . shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)," which includes "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Generally, in order to carry out the purposes of Section 215(a)(3) by freeing employees of the fear of economic retaliation, the discharged employee should be restored, as nearly as possible, to the

9

same situation [they] would have occupied if [they] had not been discharged." *Goldberg* v. *Bama Mfg. Corp.*, 302 F.2d 152, 156 (5th Cir. 1962). Courts traditionally award back pay and liquidated damages for retaliatory termination to place the plaintiff in the same position they would have occupied had the retaliation not occurred. *E.g.*, *Sankoh* v. *Gold Street Capital Fund*, Civil Action No. PX-17-2276, 2018 WL 1709115, at *4-5 (D. Md. Apr. 9, 2018) (awarding back-pay consisting of the difference between the amount plaintiff would have earned through employment with defendants minus amount earned through other employment plus liquidated damages for retaliatory termination under FLSA); *Scott* v. *Trustify Inc.*, Civil Action No. 19-cv-00032-LO-MSN, 2019 WL 4198624, at *7-11 (E.D. Va. July 29, 2019) (same). Here, Ms. Cook requests an award of lost wages during her period of unemployment that was the result of Defendants' retaliatory actions. ECF No. 72 at 10–11. Specifically, Ms. Cook seeks an award of the federal minimum wages she would have earned if she had worked her typical 52-hour workweek during this timeframe. *Id.* As noted, Defendants have not opposed or otherwise responded. As set forth in the chart below, to restore Ms. Cook to the same situation she would have occupied if she had not been discharged, the Court will award her lost wages for the duration her unemployment at the requested federal rate.

**Chart 5: Lost Wages**

|  | **Hourly Wage** | **Hours per Week** | **Wages Per Week** | **Weeks Worked** | **Subtotal** |
|---|---|---|---|---|---|
| Minimum Wages Lost | $7.25 | 40 | $290 | 35 | $10,150.00 |
| Overtime Wages Lost | $10.88 | 12 | $130.56 | 35 | $4,569.60 |
| **Total** |  |  |  |  | **$14,719.60** |

Section 216(b) allows for an award liquidated damages in an amount equal to lost wages. The Court will therefore award Ms. Cook an equal amount in liquidated damages, for total of $26,439.20.

B.     Attorney's Fees

Under the MWHL, a prevailing plaintiff is entitled to recover reasonable attorney's fees. Md. Code Ann., Lab. & Empl. § 3-427(d).  Here, Ms. Cook seeks a fee award of $59,347.50. ECF No. 72 at 11.  Reasonable attorney's fees are determined using a three-part test.  *McAfee* v. *Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).  First, the Court calculates the lodestar figure by multiplying "the number of reasonable hours expended times a reasonable rate." *Id.* (internal quotations omitted).  Second, the Court must subtract hours spent on any unsuccessful claims that are unrelated to the successful ones.  *Id.*  Finally, the Court awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

The Court must first determine the lodestar amount, that is, the reasonable hourly rate multiplied by reasonable hours expended.  *Robinson* v. *Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  Reasonableness is assessed using the *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber* v. *Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors set forth in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).  The Court is not required to analyze each factor individually or even examine every factor but may instead consider the factors as a whole.  *Martin* v. *Mecklenburg Cnty.*, 151 Fed. Appx. 275, 283 (4th Cir. 2005).  Instead of seeking "auditing perfection," the goal of fee-shifting "is to do rough justice." *Fox* v. *Vice*, 563 U.S. 826, 838 (2011).  Therefore, a court "may take into account [its] overall

11

sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* A court may not, however, consider the proportionality between the damages awarded to the plaintiff and the fee requested. *Jones* v. *Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). Ultimately, the plaintiff has the burden of demonstrating that the requested fees are reasonable. *Jones* v. *Dancel*, 792 F.3d 395, 404 (4th Cir. 2015). Ms. Cook seeks compensation for her attorneys as set forth below.

**Chart 6: Attorney's Fees**

| Name | Position | Hourly Rate | Hours Worked | Subtotal |
|---|---|---|---|---|
| Jamaal Stafford | Owner | $425.00 | 46.2 | $19,635.00 |
| Kwabena Owusu-Koduah | Associate | $225.00 | 25.7 | $5,782.50 |
| Alex S. Dornacker | Associate | $225.00 | 34.7 | $7,807.50 |
| Nana ('Crystal') McBrown | Associate | $225.00 | 24.5 | $5,512.50 |
| Megan E. Lensink | Associate | $225.00 | 12.6 | $2,835.00 |
| Camey C. Turpin | Paralegal | $150.00 | 118.5 | $17,775.00 |
| **Total** | | | **262.2** | **$59,347.50** |

        1.    <u>Reasonable Rates</u>

In determining the reasonableness of the requested hourly rates, the Court finds *Johnson* factors five (customary fees for like work) and nine (experience and ability) most relevant.

For the Court to assess reasonable rates, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [counsel] seeks an award." *Robinson*, 560 F.3d at 244 (emphasis removed) (quoting *Plyler* v. *Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "Satisfactory specific evidence" typically includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

Here, Jamaal Stafford, lead counsel for Ms. Cook, filed a sworn declaration that outlines his professional qualifications and accomplishments. ECF No. 72-5. Additionally, in connection

with Ms. Cook's motion to supplement, Mr. Stafford filed an additional sworn declaration that outlines the relevant educational and professional qualifications of other attorneys at his firm who worked on Ms. Cook's case to support their fee requests and billing rates.  ECF No. 73-1.  While he did not present additional documentation in support of the fee award, such as affidavits of other local lawyers, the Court may rely on its own knowledge of the market to provide this information.  *E.g.*, *CoStar Grp., Inc.* v. *LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).  In Maryland, that knowledge is embedded within the guidelines regarding hourly rates contained in Appendix B to the Local Rules.  *Gonzalez* v. *Caron*, Civil Action No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011); Local Rule App'x B.3.  The Fourth Circuit has cautioned that a fee matrix—even one contained within a district court's local rules—may be considered but is not "presumptively reasonable."  *De Paredes* v. *Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025).  Instead, a district court "must consider all relevant evidence to determine the prevailing market rates in the relevant community, including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its own personal knowledge." *Id.* (internal quotation marks and citations omitted).

Mr. Stafford contends the attorneys' hourly rates are reasonable under the guidelines set forth in Appendix B of the Local Rules.  ECF No. 73 at 2.  Mr. Stafford attested to both his experience and that of his co-counsel and paralegal.  ECF No. 72-5, 73.  While Defendants did not challenge Ms. Cook's requested attorney's fees, this Court must independently assess the reasonableness of the amounts requested.  *E.g.*, *Sankoh* v. *Gold Stret Capital Fund*, Civil Action No. PX-17-2276, 2018 WL 1709115, at *5 (D. Md. April 9, 2018); *Lopez* v. *Lawns 'R' Us*, Civil Action No. DKC-07-2979, 2008 WL 2227353, at *5 (D. Md. May 23, 2008).  The proffered hourly rates are within this Court's Local Guidelines, but Mr. Owosu-Koduah and Ms. McBrown's hourly rates are not supported by their experience and the available evidence.

13

At the time he represented Ms. Cook in this matter, Mr. Owosu-Koduah had approximately one year of general experience and two years of employment law experience. ECF Nos. 72-6, 73. Ms. McBrown had been admitted to the bar for less than one year when she performed work on behalf of Ms. Cook in March 2025. ECF No. 72-6 at 4–5, 73. Yet, both Mr. Owosu-Koduah and Ms. McBrown billed at $225 per hour, which is the top of the guidelines for attorneys admitted to the bar for less than five years ($150-$225 per hour).[4] ECF No. 73; Local Rule App'x B.3. The evidence provided does not support these billing rates. *E.g.*, *Flores v. Hoge*, Civil Action No. DKC-15-1988, 2016 WL 2924918, at *5 (D. Md. May 19, 2016) (reducing the hourly rate of an attorney with six years of experience from $295 per hour—the top of the guideline range for attorneys admitted for five to eight years—to $250 per hour); *Calderon Recinos* v. *JMZ Construction, LLC*, Civil Action No. DKC-15-406, 2016 WL 3162820, at *7 (D. Md. June 7, 2016) (reducing the hourly rate of an attorney with one year of experience from $275 per hour—which was above the top of the guideline range for attorneys admitted less than one year—to $200 per hour). Mr. Owosu-Koduah's hourly rate will be reduced to $200 and Ms. McBrown's hourly rate will be reduced to $150. The remaining hourly rates—Mr. Stafford ($425), Mr. Dornacker ($225), Ms. Megan Lensink ($225), and Ms. Camey Turpin ($150)—are supported by their experience and are therefore reasonable.

    2.    <u>Reasonable Hours</u>

The next inquiry is whether the number of hours Ms. Cook's attorneys worked are reasonable. Mr. Stafford asserts that "[b]illing judgment was exercised" and time not fully productive was removed from the request for attorney's fees. ECF No. 72-5 at 2. The Court

---

[4] The years of experience are based on when the attorney was first admitted to the bar of any court. Local Rules App'x B.3 (D. Md. 2025) (examining hourly rates based on attorney's number of years admitted to the bar).

finds *Johnson* factors one (time and labor), two (novelty and difficulty), and three (required skill) most relevant to this question.

The attorney has the burden to provide sufficient information in support of billing entries. *Kreuze* v. *VCA Animal Hosps., Inc.*, Civil Action No. PJM-17-1169, 2019 WL 2107263, at *7 (D. Md. May 14, 2019) (stating that courts have declined to award fees for hours where the description is ambiguous as to whether the task was clerical or legal). "[C]ounsel is not required to record in great detail how each minute . . . was expended," so long as they identify the general subject matter of their time expenditures. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Furthermore, "clerical, ministerial, or administrative work should not be compensated as an award for attorney's fees, no matter who performs it," but an attorney may "recover for compensable work generally performed by paralegals at the paralegal rate." *Kubas* v. *331B, LLC*, Civil Action No. EA-20-2456, 2024 WL 3487890, at *4 (D. Md. July 19, 2024) (internal quotations and citations omitted) (collecting cases). "[A]cross-the-board reductions are appropriate when billing records are voluminous and multiple billing entries are in dispute." *Chapman* v. *Ourisman Chevrolet Co.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at *18 n.11 (D. Md. July 1, 2011) (alteration in original) (quotation marks and citations omitted).

The Court first considers the hours billed for reasonableness. *Guillen* v. *Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2024 WL 1346838, at *6-7 (D. Md. Mar. 29, 2024) (stating that a court will evaluate only the "hours sought"—the number of hours worked minus non-billable tasks—to determine reasonableness for purposes of the Lodestar analysis). Mr. Stafford filed a spreadsheet that outlined the work he and his fellow attorneys performed for Ms. Cook. ECF No. 72-6. In total, counsel for Ms. Cook seek reimbursement for 262.2 hours worked. *Id.* Under the first, second, and third *Johnson* factors, the Court finds that 262.2 hours is "an excessive amount of time to spend on the instant matter —a relatively straightforward

15

wage-and-hour dispute" in which the Defendants failed to meaningfully participate. *Carrera* v. *EMD Sales, Inc.*, Civil Action No. JKB-17-3066, 2021 WL 3856287, at *8 (D. Md. Aug. 27, 2021). Included in these 262.2 hours, Ms. Cook's attorneys billed for a variety of non-compensable clerical tasks, including calendaring court deadlines (ECF No. 72-6 at 1–4, 6), filing various motions (*id.* at 2–6), preparing binders (*id.* at 3), and engaging in routine communications and scheduling with their client and the Court (*id.* at 1–6). Given the multiple billing entries related to administrative and clerical tasks contained in the fee petition, this Court finds a reduction in compensable hours is necessary. "In reducing a claim for time spent, the court may use a percentage deduction as a practical means of trimming fat from a fee application." *Carrera*, 2021 WL 3856287, at *7 (internal quotation marks and citation omitted) (applying a global 35 percent reduction when number of hours spent was disproportionate to difficulty of the litigation); *see also Kubas*, 2024 WL 3487890, at *5 (applying a 15 percent reduction in the number of hours claimed where the billing records contained excessive entries for administrative and clerical tasks).

In sum, upon analyzing the facts and *Johnson* factors 1, 2, and 3, the Court will reduce the number of hours claimed by 15 percent. The total rate and hours adjustments are set forth below.

**Chart 7: Adjusted Attorney's Fees**

| Name | Original Hourly Rate | Adjusted Hourly Rate | Original Hours Spent | Adjusted Hours Spent | Adjusted Subtotal |
|---|---|---|---|---|---|
| Jamaal Stafford | $425.00 | $425.00 | 46.2 | 39.27 | $16,689.75 |
| Kwabena Owusu-Koduah | $225.00 | $200.00 | 25.7 | 21.845 | $4,369.00 |
| Alex S. Dornacker | $225.00 | $225.00 | 34.7 | 29.495 | $6,636.38 |
| Nana ("Crystal") McBrown | $225.00 | $150.00 | 24.5 | 20.825 | $3,123.75 |
| Megan E. Lensink | $225.00 | $225.00 | 12.6 | 10.71 | $2,409.75 |
| Camey C. Turpin | $150.00 | $150.00 | 118.5 | 100.725 | $15,108.75 |
| **Totals** | | | | **222.87** | **$48,337.38** |

3.  <u>Adjustments to the Lodestar Figure</u>

After determining the lodestar figure, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (internal quotations and citation omitted). When calculating a reasonable fee award, "the most critical factor" is "the degree of success obtained." *Brodziak* v. *Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436). An award is reduced if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. The Court must also consider nonmonetary success, such as vindicating rights and deterring future violations. *Butler* v. *Directsat USA, LLC*, Civil Action No. DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016). None of these considerations weigh in favor of adjusting the lodestar figure in this case. Counsel secured a default judgment on all Ms. Cook's claims and the total fee award is not disproportionate to the total damage award. The Court will therefore award $48,337.38 in attorney's fees.

**C.    Costs**

The Court has the discretion to determine costs that are assessed against a losing defendant. *Roy* v. *County of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998). Costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell* v. *McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations and citation omitted). Service of process, filing fees, attorney admission costs, among other things, are reimbursable. *Butler*, 2023 WL 6517593, at *4. Plaintiff seeks $413.13 in litigation costs, which includes the filing fee. ECF No. 72 at 11. These costs are reasonable and will be awarded in full.

## III.  CONCLUSION

For the foregoing reasons, it is hereby ordered that Ms. Cook's petition for damages, attorney's fees, and costs is granted in part and denied in part.  The Court will enter an award of $58,844.22 in damages for Ms. Cook, $48,337.38 in attorney's fees; and $413.13 in costs.  A separate Order follows.


Date:  November 7, 2025                             /s/
                                             Erin Aslan
                                             United States Magistrate Judge